NANCY HERSH, ESQ., State Bar No. 49091
MARK E. BURTON, JR., ESQ., State Bar No. 178400
RACHEL ABRAMS, ESQ., State Bar No. 209316
HERSH & HERSH
A Professional Corporation
2080 Opera Plaza
601 Van Ness Avenue
San Francisco, CA 94102-6388
Telephone: (415) 441-5544
Facsimile: (415) 441-7586

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL NITZBERG by and through his guardian ad litem, ELENA STORER, and MATTHEW NITZBERG by and through his guardian ad litem, ELENA STORER, and ELENA STORER, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>BAYER CORPORATION, BAYER PHARMACEUTICALS CORPORATION, and DOES TWO, through ONE HUNDRED, and each of them,<br><br>Defendants. | Case Number C-07-04399 CW<br><br>**DECLARATION OF RACHEL ABRAMS IN SUPPORT OF MOTION FOR ADMINISTRATIVE RELIEF TO CONSIDER WHETHER CASES SHOULD BE RELATED**<br><br>*Reference Case: Carol Minard, et al. v. Bayer Corporation, et al., Case No. C 08-00739 JSW*<br><br>Date: April 24, 2008<br>Time: 2:00 p.m.<br>Courtroom: 2<br>Judge: Honorable Claudia Wilken |

I, Rachel Abrams, declare:

1.    I am an attorney licensed to practice in all Courts of this State and am an

associate at Hersh & Hersh, attorneys for Plaintiffs Carol Minard, Jerry Greenmyer, Linda L.

Greenmyer, Robert Covell, Margo Covell and James Zanos in the case of *Carol Minard, et al. v.*

DECLARATION OF RACHEL ABRAMS IN SUPPORT OF MOTION FOR ADMINISTRATIVE RELIEF
TO CONSIDER WHETHER CASES SHOULD BE RELATED

HERSH AND HERSH
A Professional Corporation

1  *Bayer Corporation, et al.,* filed concurrently with this motion and accompanying declaration. I

2  make this declaration in support of Plaintiffs' Motion for Administrative Relief to Consider

3  Whether Cases Should Be Related.

4          2.      Attached as Exhibit "A" is a true and correct copy of the complaint for *Carol*

5

6  *Minard, et al. v. Bayer Corporation, et al.*, filed concurrently with this motion and accompanying

7  declaration.

8          3.      On March 7, 2008, in compliance with Civil L.R. 7-11 and 7-12, plaintiffs'

9  counsel attempted to obtain a stipulation from defendants' counsel. Plaintiffs' counsel left a

10  telephonic voicemail message to defendants' counsel, but received no response.

11          I declare under penalty of perjury that the foregoing is true and correct and if called as a

12  witness I could and would competently testify thereto.

13  DATED:  March 10, 2008

14

15                              HERSH & HERSH
                                A Professional Corporation
16

17

18  By_____
                                RACHEL ABRAMS
19                              Attorneys for Plaintiffs

20

21

22

23

24

25

26

27

28

DECLARATION OF RACHEL ABRAMS IN SUPPORT OF MOTION FOR ADMINISTRATIVE RELIEF
TO CONSIDER WHETHER CASES SHOULD BE RELATED

# EXHIBIT A

1  NANCY HERSH, ESQ., State Bar No. 49091
2  MARK E. BURTON, JR., ESQ., State Bar No. 178400
   RACHEL ABRAMS, ESQ., State Bar No. 209316
3  HERSH & HERSH
   A Professional Corporation
4  2080 Opera Plaza
   601 Van Ness Avenue
5  San Francisco, CA 94102-6388
   Telephone: (415) 441-5544
6  Facsimile: (415) 441-7586

E-filing

7  Attorneys for Plaintiffs

8

9                 UNITED STATES DISTRICT COURT

                                                        EMC
10             NORTHERN DISTRICT OF CALIFORNIA

11
   CAROL MINARD, JERRY              CV 08        0739
12 GREENMYER, LINDA L.           Case Number
   GREENMYER, ROBERT COVELL,   )
13 MARGO COVELL, JAMES ZANOS   )  COMPLAINT FOR DAMAGES AND
                               )     DEMAND FOR JURY TRIAL
14         Plaintiffs,          )
                               )  [Products Liability/Fraud/ Loss of
15                             )           Consortium]
   vs.                         )
16                             )  1. Strict Liability- Failure to Warn
   BAYER CORPORATION, BAYER    )  2. Negligence
17 PHARMACEUTICALS             )  3. Breach of Express Warranty
   CORPORATION, BAYER          )  4. Breach of Implied Warranty
18 HEALTHCARE, LLC, BAYER A.G.,)  5. Fraud
   and DOES ONE, through ONE   )  6. Fraud By Concealment
19 HUNDRED, inclusive,         )  7. Violation of Business
                               )     and Professions Code § 17200
20         Defendants.         )  8. Violation of Business
                               )     and Professions Code § 17500
21                             )  9. Loss of Consortium
                               )
22                             )
                               )
23 _____    )

24

25              DEMAND FOR JURY TRIAL

26   Plaintiffs hereby demand trial by jury.

27

28
                            - 1 -

1

## PRELIMINARY ALLEGATIONS

### Parties

1.

Jurisdiction of this Court is founded upon 28 U.S.C. §1332.

2.

Plaintiffs are citizens of the United States, residing in states wholly diverse from all Defendants as alleged herein.

3.

Defendant BAYER CORPORATION is incorporated in the State of Indiana, with its principal place of business in Pittsburgh, Pennsylvania, doing business in the State of California, County of San Francisco. BAYER CORPORATION is a wholly owned subsidiary of Defendant BAYER A.G. At all times herein mentioned, Defendant BAYER CORPORATION designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors, and retailers for resale to physicians, hospitals, medical practitioners and the general public, a certain pharmaceutical product, hereinafter referred to as TRASYLOL (also known as APROTININ).

4.

Defendant BAYER PHARMACEUTICALS CORPORATION is incorporated in the State of Delaware, with its principal place of business in West Haven, Connecticut, doing business in the State of California, County of San Francisco. BAYER PHARMACEUTICALS CORPORATION is a wholly owned subsidiary of Defendant BAYER CORPORATION. At all times herein mentioned, Defendant BAYER PHARMACEUTICALS CORPORATION designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors, and retailers for resale to physicians, hospitals, medical practitioners and the general public, a certain pharmaceutical product, hereinafter referred to as TRASYLOL

HERSH AND HERSH
A Professional Corporation

- 2 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    (also known as APROTININ).

2                                5.

3    Defendant BAYER HEALTHCARE, LLC is a limited liability company whose sole

4    member is Defendant BAYER CORPORATION.    On information and belief, BAYER

5    HEALTHCARE, LLC is a company of both Indiana and Pennsylvania, doing business in

6    the State of California, County of San Francisco. At all times herein mentioned, Defendant

7    BAYER HEALTHCARE, LLC designed, manufactured, tested, analyzed, distributed,

8    recommended, merchandised, advertised, promoted, supplied and sold to distributors, and

9    retailers for resale to physicians, hospitals, medical practitioners and the general public, a

10   certain pharmaceutical product, hereinafter referred to as TRASYLOL (also known as

11   APROTININ).

12                               6.

13   Defendant BAYER A.G., a global diversified chemical company, is a German

14   corporation, with its principal place of business in Leverkusen, Germany, doing business in

15   the State of California, County of San Francisco. At all times herein mentioned, Defendant

16   BAYER A.G. designed, manufactured, tested, analyzed, distributed, recommended,

17   merchandised, advertised, promoted, supplied and sold to distributors, and retailers for

18   resale to physicians, hospitals, medical practitioners and the general public, a certain

19   pharmaceutical product, hereinafter referred to as TRASYLOL (also known as

20   APROTININ).

                                  7.

21

22   Plaintiffs do not know the true names of the Defendants sued herein as DOES ONE

23   through HUNDRED, inclusive.    Plaintiffs allege that each of the fictitiously named

24   Defendants is responsible in some manner for the occurrences herein alleged, and caused

25   the injuries and damages sustained by Plaintiffs, as herein alleged.

26                               8.

27   At    all    relevant    times    herein,    BAYER    CORPORATION,    BAYER

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

HERSHANDHERSH
A Professional Corporation

PHARMACEUTICALS CORPORATION, BAYER HEALTHCARE, LLC, BAYER A.G., and DOES ONE, through ONE HUNDRED, inclusive, shall be collectively referred to as "Defendants."

9.

At all times herein mentioned, each of the Defendants was the agent and employee of every other Defendant in doing the acts herein alleged, and was, at all times, acting within the purpose and scope of said agency and employment and all of said acts and conduct were ratified and approved by said Defendants.

10.

Plaintiffs CAROL MINARD, JERRY GREENMYER, ROBERT COVELL, JAMES ZANOS are, and at relevant times herein, citizens of the State of California and were injured after being administered Trasylol during open-heart surgery to prevent peri-operative bleeding. Plaintiffs LINDA L. GREENMYER, and MARGO COVELL are, and at relevant times herein, citizens of the State of California and are spouses of the injured Plaintiffs.

**Facts**

11.

Trasylol (also known as Aprotinin injection) is a naturally occurring proteolytic enzyme inhibitor obtained from bovine lung. Aprotinin consists of 58 amino acid residues. It is a single-chain polypeptide, consisting of 6512 daltons and is cross-linked by three disulfide bridges.

12.

The reactive bond site for Aprotinin is lysine-15-alanine-16, and it forms reversible stoichiometric complexes.

13.

Aprotinin reacts with serine site of the enzyme.

14.

Aprotinin was discovered in the 1930's when Kraut et al. isolated a kallikrein inhibitor from bovine lung.

15.

Aprotinin was launched under the brand name Trasylol in Germany in 1959.

16.

Trasylol was approved by the United States Food and Drug Administration ("FDA") in 1993 and is indicated for prophylactic use to reduce peri-operative blood loss and the need for blood transfusion in patients undergoing cardiopulmonary bypass in the course of open-heart surgical procedures. It is administered intravenously.

17.

Trasylol is a broad-spectrum protease inhibitor, which modulates the systemic inflammatory response associated with cardiopulmonary bypass surgery. The effects of Trasylol use in cardiopulmonary bypass surgery involve reduction in inflammatory response, which translates into a decreased need for blood transfusions.

18.

Upon approval in the United States, Trasylol contained the following warning:

> Anaphylactic or anaphylactoid reactions are possible when Trasylol is administered. Hypersensitivity reactions are rare in patients with no prior exposure to Aprotinin. The risk of anaphlaxis is increased in patients who are re-exposed to Aprotinin-containing products. The benefit of Trasylol to patients undergoing primary CABG surgery should be weighed against the risk of anaphlaxis should a second exposure be required.

19.

According to Defendants, since approval, an estimated 4.3 billion patients have been administered Trasylol.

- 5 -

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

20.

Defendants estimated that Trasylol generated approximately $293 million in sales in 2005 alone, making it Bayer A.G.'s 11th largest selling drug.

21.

On January 26, 2006, *The New England Journal of Medicine* (NEJM), published an article by Mangano, et al. reporting an association of Trasylol with, among other things, serious renal toxicity in patients undergoing coronary artery bypass grafting surgery. This study was an observational study of patients who received either Trasylol, one of two alternative drugs intended to decrease peri-operative bleeding (aminocaproic acid or tranexamic acid), or no specific drug treatment.

22.

The FDA evaluated this NEJM study, along with other clinical studies in the literature, and adverse event reports submitted to the FDA through the MedWatch program, to determine if labeling changes or other actions were warranted.

23.

While the FDA continued it evaluation it provided the following recommendations to healthcare providers and patients:

> Physicians who use Trasylol should carefully monitor patients for the occurrence of toxicity, particularly to the kidneys, heart, or central nervous system and promptly report adverse event information to Bayer, the drug manufacturer, or to the FDA MedWatch program, as described at the end of this advisory. Physicians should consider limiting Trasylol use to those situations where the clinical benefit of reduced blood loss is essential to medical management of the patient and outweighs the potential risks.

24.

The FDA Advisory Board Committee convened on September 21, 2006 to discus its

- 6 -

HERSHANDHERSH
A Professional Corporation

findings regarding Trasylol and to determine whether the warning on Trasylol needed to be changed.

25.

After reviewing what it considered to be all of the available date on the safety of Trasylol, the 19-member advisory panel recommended the FDA that Defendants did not need to strengthen a warning to physicians about Trasylol.

26.

Just days later, the FDA was contacted by Alexander Walker, a professor at Harvard's School of Public Health, regarding a 67,000 patient-study he assisted in conducting at Defendants' request (the "Walker Study").

27.

Defendants knew of this study and data but failed to disclose this data to the FDA at the September 21, 2006 FDA Advisory Board Committee Meeting. This new data confirmed that, among other things, Trasylol increased the risk of renal failure.

28.

At the request of Defendants, the Walker Study examined 67,000 hospital records of patients undergoing bypass surgery. The study suggests that the patients who received Trasylol were at an increased risk for death, kidney failure, congestive heart failure, and stroke.

29.

On December 15, 2006, the FDA sent an Alert to healthcare professionals advising of label change for Trasylol:

> The new labeling for Trasylol (December 2006) has a more focused indication for use, a new Warning about renal failure dysfunction, a revised Warning about anaphylactic reactions, and a new Contraindication.

- 7 -

HERSHANDHERSH
A Professional Corporation

Trasylol is now indicated only for prophylactic use to reduce peri-operative blood loss and the need for blood transfusion in patients who are at *an increased risk for blood loss and blood transfusion* undergoing cardiopulmonary bypass in the course of coronary artery bypass grafting (CABG) surgery. Trasylol should be administered only in the operative setting where cardiopulmonary bypass can be started quickly. Trasylol should not be administered to any patient with a known or suspected exposure to Aprotinin within the past 12 months.

FDA is evaluating additional recently submitted epidemiological safety study data (discussed below), in the context of all other safety and efficacy information available on Aprotinin. This review may result in other actions, including additional changes to the full prescribing information (product labeling).

30.

Moreover, as of December 2006, the Defendants revised the label for Trasylol to include a specific statement in the WARNING section of the label that use of Trasylol creates an increased risk of renal dysfunction and renal failure.

31.

On December 15, 2006, the FDA sent an Alert to healthcare professionals advising of a change in the product label for Trasylol:

The new labeling for Trasylol (December 2006) has a more focused indication for use, a new Warning about renal dysfunction, a revised Warning about anaphylactic reactions, and a new Contraindication. Trasylol is now indicated only for prophylactic use to reduce peri-operative blood loss and the need for blood transfusion in patients who are at *an increased risk for blood loss and blood transfusion* undergoing cardiopulmonary bypass in the course of coronary artery bypass grafting (CABG) surgery. Trasylol should be administered only in the operative setting where cardiopulmonary bypass can be started quickly. Trasylol should not be administered to any patient with a known or suspected exposure to Aprotinin within the past 12 months.

FDA is evaluating additional recently submitted epidemiological safety study data (discussed below), in the context of all other safety and efficacy information available

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

HERSHANDHERSH
A Professional Corporation

1    on Aprotinin.   This review may result in other actions,
2    including additional changes to the full prescribing
      information (product labeling).

3                                    32.

4        Moreover, as of December 2006, the Defendants revised the label for Trasylol to
5
      include a specific statement in the WARNING section of the label that use of Trasylol
6
7    creates an increased risk of renal dysfunction and renal failure.

8                                    33.

9        On January 25, 2007, Bayer announced it was discontinuing three clinical studies
10   for Trasylol.  The studies were to investigate the safety and efficacy of Trasylol with regard
11   to transfusion requirements and blood loss in adults undergoing spinal fusion surgery,
12   pneumonectomy or esophagectomy for cancer, and total cystectomy in bladder cancer, all
13   off-label uses.

14                                   34.

15       Plaintiffs' physicians administered Trasylol during open-heart surgeries and
16   sustained serious injuries, including renal failure and/or cardiac complications, including
17
18   myocardial infarction.

19                                   35.

20       On or about January 12, 2006, Carol Minard underwent heart surgery at Mercy
21   General Hospital in Sacramento, California.

22                                   36.

23       Without knowing the true dangers and risks of Trasylol, Ms. Minard was
24   administered Trasylol, a pharmaceutical product designed, manufactured, promoted,
25   distributed and sold by Defendants.

26                                   37.

27       As a direct, proximate, and legal result of the negligence, carelessness, fraudulent
28

- 9 -

HERSHANDHERSH
A Professional Corporation

HERSHANDHERSH
A Professional Corporation

1 | concealment other wrongdoing of the Defendants, as described herein, Ms. Minard began

2 | experiencing cardiac insufficiency soon after heart surgery, and approximately two weeks

3 | later, required a dual chamber pacemaker be implanted. At no time did Plaintiff have any

4 | knowledge that her cardiac insufficiency might be related to or caused by Trasylol, nor did

5 | she have any reason to suspect that those problems might in any way be related to or caused

6 | by Trasylol.

7 | 38.

8 |

9 | As a direct, proximate, and legal result of the negligence, carelessness, fraudulent

10 | concealment other wrongdoing of the Defendants, as described herein, Ms. Minard suffered

11 | the herein described injuries.

12 | 39.

13 | As a direct, proximate, and legal result of the negligence, carelessness, fraudulent

14 | concealment other wrongdoing of the Defendants, as described herein, Ms. Minard

15 | sustained permanent and devastating injuries, including, but not limited to, cardiac

16 | insufficiency requiring a dual chamber pacemaker being implanted. All of said injuries

17 | caused Ms. Minard extensive anxiety, distress, fear, pain, suffering, and depression, while

18 | they substantially reduced Ms. Minard's ability to enjoy life. All of said injuries have

19 | caused, and will continue in the future to cause, Plaintiff extensive anxiety, distress, fear,

20 |

21 | pain, suffering, and depression, while they have substantially reduced Plaintiff's ability to

22 | enjoy life.

23 | 40.

24 | On or about August 25, 2003, Jerry Greenmyer underwent heart surgery at Mercy

25 | General Hospital in Sacramento, California.

26 | 41.

27 | Without knowing the true dangers and risks of Trasylol, Mr. Greenmyer was

28 |

- 10 -

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    administered Trasylol, a pharmaceutical product designed, manufactured, promoted,
2    distributed and sold by Defendants.

3                                        42.

4    As a direct, proximate, and legal result of the negligence, carelessness, fraudulent
5    concealment other wrongdoing of the Defendants, as described herein, Mr. Greenmyer
6    began experiencing renal insufficiency after heart surgery, and eventually was diagnosed
7    with chronic progressive renal insufficiency.  At no time did Plaintiff have any knowledge
8    that his renal insufficiency might be related to or caused by Trasylol, nor did he have any
9    reason to suspect that those problems might in any way be related to or caused by Trasylol.
10

11                                       43.

12    As a direct, proximate, and legal result of the negligence, carelessness, fraudulent
13    concealment other wrongdoing of the Defendants, as described herein, Mr. Greenmyer
14    suffered the herein described injuries.

15                                       44.

16    As a direct, proximate, and legal result of the negligence, carelessness, fraudulent
17    concealment other wrongdoing of the Defendants, as described herein, Mr. Greenmyer
18    sustained permanent and devastating injuries, including, but not limited to, renal
19    insufficiency that developed to chronic progressive renal insufficiency.  All of said injuries
20    caused Mr. Greenmyer extensive anxiety, distress, fear, pain, suffering, and depression,
21    while they substantially reduced Mr. Greenmyer's ability to enjoy life.  All of said injuries
22    have caused, and will continue in the future to cause, Plaintiff extensive anxiety, distress,
23    fear, pain, suffering, and depression, while they have substantially reduced Plaintiff's
24    ability to enjoy life.
25

26

27

28

HERSHANDHERSH
A Professional Corporation

45.

On or about February 6, 2003, Robert Covell underwent heart surgery at Mercy General Hospital in Sacramento, California.

46.

Without knowing the true dangers and risks of Trasylol, Mr. Covell was administered Trasylol, a pharmaceutical product designed, manufactured, promoted, distributed and sold by Defendants.

47.

As a direct, proximate, and legal result of the negligence, carelessness, fraudulent concealment other wrongdoing of the Defendants, as described herein, within two days of open-heart surgery and the administration of Trasylol, Mr. Covell went into complete renal failure, and was immediately placed on dialysis. Mr. Covell continued dialysis three times a week for the next six weeks. At no time did Plaintiff have any knowledge that his renal insufficiency might be related to or caused by Trasylol, nor did he have any reason to suspect that those problems might in any way be related to or caused by Trasylol.

48.

As a direct, proximate, and legal result of the negligence, carelessness, fraudulent concealment other wrongdoing of the Defendants, as described herein, Mr. Covell suffered the herein described injuries.

49.

As a direct, proximate, and legal result of the negligence, carelessness, fraudulent concealment other wrongdoing of the Defendants, as described herein, Mr. Covell sustained permanent and devastating injuries, including, but not limited to, renal failure requiring dialysis. All of said injuries caused Mr. Covell extensive anxiety, distress, fear, pain, suffering, and depression, while they substantially reduced Mr. Covell's ability to enjoy

- 12 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

HERSHANDHERSH
A Professional Corporation

life. All of said injuries have caused, and will continue in the future to cause, Plaintiff extensive anxiety, distress, fear, pain, suffering, and depression, while they have substantially reduced Plaintiff's ability to enjoy life.

50.

On or about September 8, 2005, James Zanos underwent heart surgery at the Doctors Medical Center of Modesto, California.

51.

Without knowing the true dangers and risks of Trasylol, Mr. Zanos was administered Trasylol, a pharmaceutical product designed, manufactured, promoted, distributed and sold by Defendants.

52.

As a direct, proximate, and legal result of the negligence, carelessness, fraudulent concealment other wrongdoing of the Defendants, as described herein, immediately after open-heart surgery and the administration of Trasylol, Mr. Zanos had heart failure and had to be revived with an external defibrillator. At no time did Plaintiff have any knowledge that his cardiac failure might be related to or caused by Trasylol, nor did he have any reason to suspect that those problems might in any way be related to or caused by Trasylol.

53.

As a direct, proximate, and legal result of the negligence, carelessness, fraudulent concealment other wrongdoing of the Defendants, as described herein, Mr. Zanos suffered the herein described injuries.

54.

As a direct, proximate, and legal result of the negligence, carelessness, fraudulent concealment other wrongdoing of the Defendants, as described herein, Mr. Zanos sustained permanent and devastating injuries, including, but not limited to, cardiac failure. All of said

- 13 -

HERSHANDHERSH
A Professional Corporation

1    injuries caused Mr. Covell extensive anxiety, distress, fear, pain, suffering, and depression,

2    while they substantially reduced Mr. Zanos' ability to enjoy life. All of said injuries have

3    caused, and will continue in the future to cause, Plaintiff extensive anxiety, distress, fear,

4    pain, suffering, and depression, while they have substantially reduced Plaintiff's ability to

5    enjoy life.

6                                         55.

7    As a direct, proximate and legal result of being administered Trasylol, Plaintiffs

8    suffered injuries, all to Plaintiffs general damages in a sum within the jurisdiction of this

9    

10   Court.

11                                        56.

12   As a direct, proximate and legal result of being administered Trasylol, Plaintiffs

13   were required to, and did, employ physicians and surgeons to examine, treat, and care for

14   them, and therefore Plaintiffs incurred medical and incidental expenses.

15                                        57.

16   As a further direct, proximate and legal result of being administered Trasylol,

17   Plaintiffs were prevented from attending to their usual occupation, and thereby sustained

18   loss of earnings.

19   

20                          **FIRST CAUSE OF ACTION**
                           **[Strict Liability; Failure To Warn]**

21                                        58.

22   Plaintiffs hereby incorporate by reference as if fully set forth herein each and every

23   allegation in Paragraphs 1 through 57 inclusive, of this Complaint.

24                                        59.

25   At all times herein mentioned, Trasylol was defective and unsafe in manufacture

26   and design, and was so at the time it was distributed by Defendants and administered to

27   Plaintiffs. Trasylol was defective in that it was not accompanied by proper warnings

28
                                        - 14 -

HERSHANDHERSH
A Professional Corporation

regarding all possible adverse consequences associated with the use of Trasylol, and given the severity of the adverse effects, the warnings given did not accurately reflect the symptoms and severity of the adverse effects.

60.

The Defendants, and each of them, knew that the Trasylol was to be used by the user without inspection for defects therein.

61.

Trasylol was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of Trasylol, i.e., administration during open-heart surgery to prevent blood loss, involved substantial dangers not readily recognizable by the ordinary user of the product. The Defendants, and each of them, failed to warn of the known or knowable likelihood of injury, including but not limited to the likelihood of renal and/or cardiac insufficiencies and failure, death and stroke as a result of administering Trasylol.

62.

Plaintiffs did not know, nor had reason to know, at the time of the use of the Trasylol, or at any time prior thereto, of the existence of the foregoing described defects. These defects caused the herein described injuries and damages to Plaintiffs.

63.

The Defendants, and each of them, knew that Trasylol was to be utilized without inspection for defects therein and that Trasylol was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

64.

Plaintiffs neither knew, nor had reason to know, at the time of being administered Trasylol, or at any time prior thereto, of the existence of the foregoing described defect.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set

- 15 -

HERSHANDHERSH
A Professional Corporation

forth.

## SECOND CAUSE OF ACTION
### [Negligence]

65.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1 through 64, inclusive, of this Complaint.

66.

At all times herein mentioned, Defendants, and each of them, had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings and prepare for use and sell Trasylol.

67.

At all times herein mentioned, Defendants, and each of them, knew, or in the exercise of reasonable care should have known, that Trasylol was of such a nature that if it was not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied and prepared and provided with proper warnings, it was unreasonably likely to injure the product's user.

68.

Defendants, and each of them, so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied Trasylol, that it was dangerous and unsafe for the use and purpose for which it was intended.

69.

Defendants, and each of them, were aware of the probable consequences of the Trasylol. Despite the fact that Defendants knew or should have known that Trasylol caused serious injuries, it failed to disclose the known or knowable risks associated with the product as set forth above. Defendants willfully and deliberately failed to avoid those consequences, and in doing so, Defendants acted with a conscious disregard of the safety of

- 16 -

HERSHANDHERSH
A Professional Corporation

Plaintiffs.

70.

As a result of the carelessness and negligence of Defendants, Trasylol caused Plaintiffs to thereby sustain the damages and injuries as herein alleged.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## THIRD CAUSE OF ACTION
### [Breach of Implied Warranty]

71.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1 through 70, inclusive, of this Complaint.

72.

At all times mentioned herein, Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold Trasylol, and prior to the time it was implanted into Plaintiffs. Defendants impliedly warranted to Plaintiffs, and to their agents, that Trasylol was of merchantable quality and safe for the use for which it was intended.

73.

Plaintiffs and their agents relied on the skill and judgment of the Defendants, and each of them, in having Trasylol administered to them.

74.

Trasylol was unsafe for its intended use, and it was not of merchantable quality, as warranted by Defendants in that it had very dangerous propensities when put to its intended use and would cause severe injury to the user, Trasylol was not accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution. Trasylol did cause Plaintiffs to sustain damages and injuries as herein alleged.

- 17 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

75.

After Plaintiffs were made aware of their injuries as a result of Trasylol, notice was duly given to Defendants of the breach of said warranty.

WHEREFORE, Plaintiffs pray or judgment against Defendants as hereinafter set forth.

## FOURTH CAUSE OF ACTION
### [Breach of Express Warranty]

76.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1 through 75, inclusive, of this Complaint.

77.

The manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandising, advertising, promoting, supplying and selling of Trasylol was expressly warranted to be safe for use by Plaintiffs and other members of the general public.

78.

At the time of the making of the express warranties, Defendants had knowledge of the purpose for which Trasylol was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose. Trasylol was unaccompanied by warnings of its dangerous propensities that were either known or knowable at the time of distribution.

79.

Plaintiffs and their physicians reasonably relied upon the skill and judgment of Defendants, and each of them, and upon said express warranty, in using Trasylol. The warranty and representations were untrue in that Trasylol caused severe injury to Plaintiffs and was unsafe and, therefore, unsuited for the use for which it was intended. Trasylol could and did thereby cause Plaintiffs to sustain damages and injuries as herein alleged.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

80.

As soon as the true nature of Trasylol, and the fact that the warranty and representations were false, were ascertained, said Defendants were notified of the breach of said warranty.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

### FIFTH CAUSE OF ACTION
### [Fraud]

81.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1 through 80, inclusive, of this Complaint.

82.

Defendants falsely and fraudulently represented to Plaintiffs, their physicians and members of the general public, that Trasylol was safe for use to prevent blood loss during open-heart surgery. The representations by said Defendants were in fact, false. By way of example, these representations included the announcements that Trasylol had equal or less complications and adverse effects as alternative injectable drugs to prevent blood loss during open-heart surgery. The true facts include, but are not limited to, the fact that Trasylol was not safe for said purpose and was, in fact, dangerous to the health and body of Plaintiffs.

83.

The representations by said Defendants were, in fact, false. The true facts were that the product was not adequately tested, that there were frequent, severe, protracted, debilitating, difficult, life threatening and disabling side effects and adverse effects of the product, including but not limited to, renal insufficiencies and failure, cardiac insufficiencies and failure, stroke, and death and Defendants did not disclose or warn users and their physicians about the known risk of injury in using Trasylol. Defendants misrepresented the safety of the product, represented that the product marketed was safe for

- 19 -

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

use, and concealed warnings of the known or knowable risks of injury in using the product.

84.

Defendants made these false representations while under an absolute duty to disclose this information to Plaintiffs and their physicians. Defendants made these false representations with the intent to induce Plaintiffs to act in the manner herein alleged, i.e., to utilize Trasylol during open-heart surgery.

85.

When said Defendants made these representations, they knew that they were false. Defendants made said representations with the intent to defraud and deceive Plaintiffs, their agents and physicians with the intent to induce them to act in the manner herein alleged, i.e., to utilize Trasylol during open-heart surgery.

86.

At the time Defendants made the aforesaid representations, and at the time Plaintiffs took the actions herein alleged, Plaintiffs and their physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiffs were induced to, and did, have Trasylol administered during open-heart surgery. If Plaintiffs had known the actual facts, they would not have taken such action. The reliance of Plaintiffs and their physicians upon Defendants' representations was justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

87.

As a result of Defendants' fraud and deceit, Plaintiffs were caused to sustain the herein described injuries and damages.

88.

In doing the acts herein alleged, the Defendants acted with oppression, fraud, and malice, and Plaintiffs are therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future. Said wrongful conduct was done

HERSHANDHERSH
A Professional Corporation

- 20 -

1   with the advance knowledge, authorization and/or ratification of an officer, director and/or

2   managing agent of Defendants.

3       WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set

4   forth.

### SIXTH CAUSE OF ACTION
### [Fraud By Concealment]

#### 89.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1 through 88, inclusive, of this Complaint.

#### 90.

At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiffs, and to their physicians, the true facts concerning Trasylol; that is, that Trasylol was dangerous, defective, and likely to cause serious consequences to users, including injuries as herein occurred, and how unnecessary it was to use said product for the purposes indicated. Defendants made the affirmative representations as set forth above to Plaintiffs, their physicians and the general public prior to the dates Trasylol was administered to Plaintiffs, while concealing the material facts as herein alleged.

#### 91.

By way of example, Defendants fraudulently concealed facts, including, but not limited to the following:

(A)     Defendants failed to disclose that sufficient pre-clinical and clinical testing and adequate post-marketing surveillance to determine the safety and side effects of Trasylol;

(B)     Defendants failed to timely disclose, and/or intentionally concealed, the interim and final results of the Walker Study showing that Trasylol use dramatically increased the risk for renal failure;

HERSHANDHERSH
A Professional Corporation

- 21 -

(C)     Defendants failed to include adequate warnings with Trasylol about the potential and actual risks, and nature, scope, severity, and duration of any serious side effects of this drug, including without limitation, the risk of renal failure; and

(D)     Defendants concealed and continue to conceal past and present facts – including that as early as the mid-nineties Defendants were aware of and concealed their knowledge of an association between the use of Trasylol and dangerous side effects, including renal and cardiac failure – from the consuming public, including Plaintiffs, when it had a duty to disclose.

92.

At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiffs and to their physicians the true facts concerning Trasylol; that is, that use could cause injuries including but not limited to renal insufficiencies and failure, cardiac insufficiencies and failure, stroke and death.

93.

At all times herein mentioned, Defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiffs' physicians and therefore from Plaintiffs, with the intent to defraud as herein alleged.

94.

At all times herein mentioned, neither Plaintiffs nor their physicians were aware of the facts set forth above, and, had they been aware of said facts, they would not have acted as they did, that is, would not have utilized Trasylol to prevent peri-operative bleeding during open-heart surgery.

95.

As a result of the concealment or suppression of the facts set forth above, Plaintiffs

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

sustained injuries and damages as hereinafter set forth.

96.

In doing the actions herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiffs are therefore entitled to punitive damages in an amount reasonably related to Plaintiffs' actual damages and to Defendants' wealth and sufficiently large to be an example to others and to deter these Defendants and others from engaging in similar conduct in the future.

97.

That at all times herein mentioned, Defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiffs' physicians and therefore from Plaintiffs, with the intent to defraud Plaintiffs as herein alleged.

98.

At all times herein mentioned, neither Plaintiffs nor their physicians were aware of the facts set forth above, and, had they been aware of said facts, they would not have acted as they did, that is, that Trasylol would not have been administered to Plaintiffs.

99.

As a result of the concealment or suppression of the facts set forth above, Plaintiffs suffered injuries and damages as hereinafter set forth.

100.

In doing the action herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiffs are therefore entitled to punitive damages in an amount reasonably related to Plaintiffs' actual damages and to Defendants' wealth and sufficiently large to be an example to others and to deter these Defendants and others from engaging in similar conduct in the future.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

HERSHANDHERSH
A Professional Corporation

**SEVENTH CAUSE OF ACTION**
**[Violation of Business & Professions Code § 17200]**

101.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1 through 100, inclusive, of this Complaint.

102.

Plaintiffs bring this cause of action pursuant to Business & Professions Code § 17204. California Business & Professions Code § 17200 provides that unfair competition shall mean and include "all unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

103.

The acts and practices described in Paragraphs 1 through 102 above, were and are likely to mislead the general public and therefore constitute unfair business practices within the meaning of Business & Professions Code § 17200. The acts of untrue and misleading advertising set forth in presiding paragraphs are incorporated by reference and are, by definition, violations of Business & Professions Code § 17200. This conduct includes, but is not limited to:

(a)     Representing to Plaintiffs, their physicians and the general public that Trasylol is safe, fit and effective for preventing peri-operative bleeding during open-heart surgery, knowing that said representations are false, and concealing from Plaintiffs, their physicians and the general public that said product has a serious propensity to cause injuries to users;

(b)     Engaging in advertising designed to create the image, impression and belief by consumers, physicians and the public that the use of Trasylol is safe, has fewer side effects and adverse complications than alternative drug treatments, even though the Defendants know these to be false, and even though the Defendants have no reasonable grounds to believe them to be true;

- 24 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

(c)   Purposely downplaying and understating the health hazards and risks associated with Trasylol, including hiding adverse data and negative scientific and clinical studies (including the Walker Study findings) from the FDA and the general public;

(d)   Issuing public statements and promotional literature deceiving potential users of Trasylol by relaying positive information, while downplaying the known adverse and serious health effects and concealing material relevant information regarding the safety of said product;

(e)   Encouraging the use of Trasylol, knowing that the product is hazardous, has not been adequately tested, and causes serious complications.

104.

These practices constitute unlawful, unfair and fraudulent business acts or practices, within the meaning of Business & Professions Code § 17200, as well as unfair, deceptive, untrue and misleading advertising as prohibited by Business & Professions Code § 17500.

105.

The unlawful, unfair and fraudulent business practices of Defendants described above present a continuing threat to members of the public in that Defendants continue to engage in the conduct described herein.

106.

As a result of their conduct described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of hundreds of millions of dollars in ill-gotten gains from the sale of Trasylol, sold in large part as a result of the acts and omissions described herein.

107.

Because of the fraudulent misrepresentations made by Defendants as detailed above, and the inherently unfair practice of committing a fraud against the public by

- 25 -

HERSHANDHERSH
A Professional Corporation

intentionally misrepresenting and concealing material information, the acts of Defendants described herein constitute unfair and fraudulent business practices.

108.

Plaintiffs, pursuant to Business & Professions Code § 17203, seeks an order of this Court compelling the Defendants to provide restitution, and to disgorge the monies collected and profits realized by Defendants, and each of them, as a result of their unfair business practices, and injunctive relief calling for Defendants, and each of them, to cease such unfair business practices in the future.

## EIGHTH CAUSE OF ACTION
### [Violation of Business & Professions Code § 17500]

109.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1 through 108, inclusive, of this Complaint.

110.

Plaintiffs bring this cause of action pursuant to Business & Professions Code § 17535. California to Business & Professions Code § 17500 provides that it is unlawful for any person, firm, corporation or association to dispose of property or perform services, or to induce the public to enter into any obligation relating thereto, through the use of untrue or misleading statements.

111.

At all times herein mentioned, Defendants have committed acts of disseminating untrue and misleading statements as defined by Business & Professions Code § 17500 by engaging in the following acts and practices with the intent to induce members of the public to utilize Trasylol:

(a)     Telling physicians and the general public that Trasylol is safe, fit and effective for preventing per-operative blood loss during open-heart surgery, knowing that said representations are false, and concealing from Plaintiffs, their physicians and the general public that said product has a serious

- 26 -

HERSH AND HERSH
A Professional Corporation

propensity to cause injuries to users;

(b)    Engaging in advertising designed to create the image, impression and belief by consumers, physicians and the public that the use of Trasylol is safe, has fewer side effects and adverse complications than alternative drugs, even though the Defendants know these to be false, and even though the Defendants have no reasonable grounds to believe them to be true;

(c)    Purposely downplaying and understating the health hazards and risks associated with Trasylol, including hiding adverse data and scientific and clinical studied (including the Walker Study) from the FDA and the general;

(d)    Issuing public statements and promotional literature deceiving potential users of Trasylol by relaying positive information, while downplaying the known adverse and serious health effects and concealing material relevant information regarding the safety of said product;

(e)    Encouraging the use of Trasylol, knowing that the product is hazardous, has not been adequately tested, and causes serious complications.

112.

These practices constitute false and misleading advertising within the meaning of Business & Professions Code § 17500.

113.

The acts of untrue and misleading statements by Defendants described above present a continuing threat to members of the public in that the acts alleged herein are continuous and ongoing, and the public will continue to suffer the harm alleged herein.

114.

As a result of their false and misleading statements described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of hundreds of millions of dollars in ill-gotten gains from the sale of Trasylol, sold in large part as a result of the false or misleading statements described herein.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

115.

Pursuant to Business & Professions Code § 17535, Plaintiffs seek an order of this Court compelling the Defendants to provide restitution, and to disgorge the monies collected and profits realized by Defendants, and each of them, as a result of their unfair business practices, and injunctive relief calling for Defendants, and each of them, to cease such unfair business practices in the future.

116.

Plaintiffs seek the imposition of a constructive trust over, and restitution and disgorgement of, the monies collected and profits realized by Defendants, and each of them, to cease such false and misleading advertising in the future.

## NINTH CAUSE OF ACTION
### [Loss of Consortium]

Plaintiffs Linda L. Greenmyer and Margo Covell allege as follows:

117.

Plaintiffs Linda L. Greenmyer and Margo Covell hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 116, inclusive, of the Complaint herein.

118.

At all times herein mentioned, Plaintiffs Linda L. Greenmyer and Margo Covell were, and are, the lawful spouses of Plaintiffs Jerry Greenmyer and Robert Covell.

119.

As a result of the aforesaid conduct of Defendants, and each of them, Plaintiffs Linda L. Greenmyer and Margo Covell have suffered injury by virtue of loss of their spouses' love, companionship, comfort, affection, society, solace, moral support, enjoyment of sexual relation, and physical assistance in the operation and maintenance of their homes.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set out in an amount within the jurisdiction of this Court, and as follows:

1.    For general damages in excess of $75,000;

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1       2.       For punitive or exemplary damages against all Defendants;

2       3.       For hospital, medical and incidental expenses in an amount that is yet to be

3   ascertained;

4       4.       For costs of suit herein; and

5       5.       For such other relief as the Court may deem just and proper.

6   DATED:   January 31, 2008

7                                HERSH & HERSH

8                                A Professional Corporation

9

10                             By_____

11                               RACHEL ABRAMS
                                 Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HERSHANDHERSH
A Professional Corporation

- 29 -

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL